## THE ELMIRA IRON AND STEEL ROLLING MILL COMPANY *vs.* THE ERIE RAILWAY COMPANY.

A railroad company having, by contract, the right to run over the defendants' road, upon accounting to the defendant company, by the 15th of each month, for the month preceding, and paying the ascertained balance due defendants within ten days thereafter, and being three months in arrears, the receiver of the defendant road severed the connection between the roads. On petition to restore connection, and for damages for interruption of business, *Held*—

1. That, under the circumstances, the petitioners were not entitled to relief, on the ground of oppressive and unwarranted conduct on the part of the receiver.

2. The court regards, as far as practicable, the public convenience in dealing with the lines of public travel and transportation, but it will not disregard or subordinate to that convenience, the rights of those by whom those lines are owned, or who are pecuniarily interested in them.

3. The failure to enforce strict performance of the contract was not a waiver of the right to insist upon it.

4. Under the order appointing the receiver, a summary method of relief by petition, or bill, for relief and injunction, was provided for, in case of violation of any existing contract. A delay of twenty-three days in applying for relief, and until the severance was actually made, which was eighteen days after notification of such intended action by the receiver, is fatal to the claim for damages for interruption of petitioners' business.

5. Provision made for performance of the contract on equitable terms.

On petition of The New Jersey and New York Railway Company, that the receiver of the Erie Railway Company be ordered to restore the connection between the roads of those companies, severed by him, and to refrain from again interrupting the connection, and that they may be compensated for the damages sustained by the interruption.

*Mr. T. N. McCarter* and *Mr. B. Williamson,* for the petitioners.

*Mr. Cortlandt Parker,* for the receiver.

THE CHANCELLOR.

The petitioners, The New Jersey and New York Railway Company, complain that the receiver of The Erie Railway Company, on the 23d of August last, in violation, as they insist, of his duty in the premises, deprived them of the advantages and accommodation of an existing contract between them and the latter company for the use of part of the track of the Erie company, and of terminal and other facilities to which, by the contract, they, as they allege, were and are entitled. The existence of the contract is not denied, and there is no question as to any of the material facts. By the contract, the petitioners were bound to pay to the Erie company certain compensation, and to that end were to account, by the 15th of each month, for the month next preceding, and to pay the ascertained balance within ten days thereafter. At the time when the connection between the tracks of the two roads was severed by the receiver, there was due from the petitioners, under the contract, the sum of $16,741.86, for the months of April, May and June, 1875, from which, however, they claimed certain deductions in reference to disputed items allowed by them under protest, in the statement of accounts. The amount of this claim does not appear, but it may be assumed that it was not very considerable in comparison with the amount of the indebtedness, as shown by the statements. Being thus in default, and

being unable to pay, and being desirous of continuing the facilities under the contract, which were a necessity to their road, their counsel applied to the counsel of the receiver in the premises. The latter replied by letter, on the 4th of August, that the receiver was willing, if the petitioners could satisfy his treasurer of the payment, in cash, of a note of $5000, maturing that day, given on account of indebtedness, under the contract, antecedent to the month of April, and of the prompt payment of the amount which had accrued since the appointment of the receiver, as it matured, to extend to the petitioners the greatest indulgence, possible. The indebtedness for June had accrued since the appointment of the receiver, and was due at the date of this letter. The petitioners paid the note of $5000, and were, as they allege, ready to pay, in cash, the amount due for June. They have not paid it, however. On the 5th of August, the receiver wrote to the president of the petitioners as follows: "The contract between our respective companies, dated September 9th, 1874, was made in the spirit of liberality toward your company. If it had been liberally administered and promptly complied with on your part, I might, as receiver of the Erie Railway, have been justified in observing it. The continued delay, however, of your company, in the settlement of the account, renders it necessary that I should now notify you, that, as at present advised, I cannot further recognize such contract; and that from and after this date, your cars will be stopped at the junction of the two roads, and your business will be done upon the same terms and conditions as we do the other local business on our road. I also beg to advise you that I must insist upon a prompt settlement of existing balances." At the date of that letter, the time for stating the account for the month of July had not yet arrived, although the compensation of the Erie company, for that month, had been earned. It is claimed by the receiver, that the amount of unsecured indebtedness due on the 20th of August last, from the petitioners, under the contract, up to the 1st day of that month, was $23,355.55.

There appears to have been, subsequently to the date of the receiver's letter, some effort to settle the existing indebtedness, which proved unsuccessful, the petitioners being unwilling, and perhaps unable to accede to the terms insisted on, which were, the payment of one-half of the amount in cash, and the rest in installments, at thirty and sixty days, with security. On the 21st of August they were notified to discontinue the running of their trains over the Erie road on the 23d of that month, and on the last mentioned day the connection was severed.

The petitioners filed their petition on the 28th day of August. On the day specified in the notice for the making of the motion on the petition (the 2d of September following), the respondents' counsel asked for a postponement, which was granted on terms, that the connection be restored, and the petitioners be accorded the facilities of the contract until the further order of the court. These terms were imposed in the interest of the public, in view of the delay asked by the receiver in bringing on the argument of the application under the petition. They were imposed without prejudice to the rights of the receiver in the premises, and the court provided for the payment of compensation, according to the contract, for the time during which, under those terms, the petitioners might be permitted to enjoy the facilities.

The petitioners insist that the conduct of the receiver in severing the connection, was oppressive and unwarranted; that, being an officer of this court, he should have applied to this court for instructions under the circumstances, and have taken its direction, instead of assuming the absolute control of the matter himself. In view of the large amount of unsecured indebtedness from the petitioners (who then claimed, and still claim to be entirely solvent,) under the contract, it is very clear that, had the receiver applied to this court for instructions, he would have been directed to require the payment of, or security for, the unsecured arrears within a very brief period. The court regards, as far as practicable, the

public convenience in dealing with the lines of public travel and transportation, but it will not disregard or subordinate to that convenience, the rights of those by whom those lines are owned, or who are pecuniarily interested in them. It would not have hesitated, therefore, to have exacted strict justice at the hands of the petitioners in the premises, towards the receiver and the interests which he represents.

But, it is urged that, by the course of dealing between the companies, the Erie company had substantially waived its right to insist on strict performance on the part of the petitioners, and, therefore, the receiver's act in severing the connection, was unlawful. There is no evidence of any course of dealing from which a waiver could be presumed. The evidence was, of indulgence to a solvent debtor in respect to an indebtedness admitted to be due, but which, at the time, it was not convenient to pay. If the petitioners considered themselves entitled to equitable consideration under the circumstances, in view of the past leniency on the part of the Erie company in requiring payment, they were at liberty to come into this court for relief. The order of this court appointing the receiver, which directs that any person or corporation having a contract with the Erie company shall be at liberty to apply by petition in this suit, or by independent bill, for, and obtain relief and injunction, if entitled thereto, to require the company or the receiver to refrain from violating any such contract, or for any other relief, on such terms as the Chancellor shall think fit, pointed out to the petitioners the means of summary relief from any illegal action on the part of the receiver, or from the imposition by him of any inequitable terms. It was their duty to have had recourse to this court in the premises, immediately after the receipt of the letter of the receiver, of the 5th of August, in which he insisted on a prompt settlement of existing indebtedness to that date, and complaining of the conduct of the petitioners in failing to pay according to the contract, stated that, as then advised, he could not further recognize the contract, and that, from and after that date, the petitioners' cars would be stopped at the junction of the two roads,

and their business done on the terms and conditions on which other local business was done on the Erie road. The severance of the connection did not, in fact, take place until the 23d of August, eighteen days afterwards. Abundant time and opportunity were afforded for recourse to this court. The petitioners, however, did not move in the matter here until the 28th of August. I find no ground for animadversion upon the conduct of the receiver. He appears to have been actuated solely by a desire to discharge his duty to his trust with fidelity.

The claim of the petitioners for damages for the interruption of their business, by the severance of the connection, cannot be entertained. Apart from all other considerations, their delay in applying to this court for relief is conclusive against them, under the circumstances. When the severance took place, they were in default. They were indebted, under the contract, to the amount of over $20,000, for which the receiver had no security. They were in no situation to dictate or to insist upon terms. Had they applied to this court when the receiver gave them notice of his intention to sever the connection in default of payment of the arrears, or later, when the treasurer exacted terms which they regarded as oppressive under the circumstances, the action of the receiver would have been directed by this court. In view of the fact that the person with whom they were dealing was an officer of this court, subject to its directions, and acting in a merely fiduciary capacity, it was their duty, if they conceived that they had cause of complaint of the conduct of the receiver, to have brought the matter before the court without delay. I am satisfied that it is for the advantage of the Erie road that the contract should be performed. But I will make no order requiring the receiver to do so, except on equitable terms.

An order will be made, that if, within ten days from the making of the order upon this decision, the petitioners shall pay to the receiver the amount due for June, July, and August, and give him satisfactory security for the payment of the amounts due for April and May, in sixty days from the

making of that order, the receiver shall continue to perform the contract, and that, in default of such payment and security, he shall be at liberty to sever the connection between the roads, without further notice. The petitioners will be ordered to pay·the amount accrued under the contract for the time since the connection was restored by the order of the second of September; that order having been accompanied by an undertaking on their part in open court, to pay, at all events, according to the terms of the contract for that time.

·  The petitioners are not entitled to costs.